DORGAN v. BIRNEY.

1. FRAUD—DISCOVERY—LACHES—EXPLANATION OF DELAY.
    One seeking relief for fraud must act promptly after discovery thereof, mere lapse of time being insufficient to constitute laches, if the delay is satisfactorily explained.

2. Same—Rescission.

The law does not require action to rescind before defrauded person is reasonably certain he has been defrauded, if he acts with reasonable promptness thereafter.

3. Same—Questions for Jury—Delay—Waiver.

In action to recover payments made under contract to purchase hotel business because of vendor's misrepresentations as to income, brought after plaintiffs had operated it for six months, rescinded contract and surrendered possession, questions as to whether they acted with sufficient promptness after discovery of misrepresentations and thereby waived right to rescind and whether they relied on their own judgment or were influenced by defendants in delaying four months *held,* issues of fact for the jury under record presented.

4. Same—Rescission—Accounting.

In action for fraud against vendors of hotel business for misrepresentations as to income, rescission *held,* not inadequate and insufficient because plaintiffs did not tender an accounting of income, where question as to net income was for jury, submitted to it and it found plaintiffs' operation resulted in no profit to them.

5. Same—Tender a Prerequisite to Rescission.

Tender back of property which passed to purchasers from vendors *held,* a prerequisite to action on ground of fraud and rescission.

Appeal from Jackson; Williams (Benjamin), J. Submitted April 4, 1935. (Docket No. 62, Calendar No. 38,300.) Decided June 3, 1935.

Action by Richard P. Dorgan and wife against Timothy A. Birney and Ruth A. Birney to recover sums paid on a contract for the purchase of hotel equipment and lease. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*Whiting & Kleinstiver,* for plaintiffs.

*Bisbee, McKone, Wilson, King & Kendall,* for defendants.

NORTH, J.   Defendant Timothy A. Birney and his sister-in-law, defendant Ruth A. Birney, operated the Blackstone Hotel in the city of Jackson, Michigan, for about four years prior to April 1, 1930. They were the owners of the equipment and other personal property used in connection with this 41-room hotel and had a 10-year lease on the building. Plaintiffs, being desirous of purchasing a property of this character, interviewed defendants and inspected the Blackstone Hotel in the latter part of February, 1930.   On the 31st of March following the deal was closed.   At that time a contract of sale and purchase was executed by the respective parties, the total consideration being $12,000, cash payment of $2,000 and balance at $200 per month.   Plaintiffs took possession April 1st.   They continued in possession and operated the hotel until October 2, 1930. Claiming that defendants had defrauded them incident to the purchase of this hotel, plaintiffs on the date last mentioned surrendered possession of the property to defendants and demanded the return of the money they had paid on the purchase price.   Defendants did not comply with plaintiffs' demand and thereupon this suit at law was instituted.   Following surrender of the property by plaintiffs, defendants resumed possession and continued to operate the hotel.   Upon trial before jury plaintiffs had verdict and judgment.   Defendants have appealed.

Plaintiffs' claim of fraud primarily is that defendants falsely and fraudulently misrepresented that the hotel was doing a business of "$1,200 a month, and $40 a day;" and further that on the occasion of the February negotiations between these par-

ties Mr. Dorgan asked Mr. Birney, in the presence of Ruth Birney, the following questions and received the following answers:

"*A.* I asked him if he was doing that *now*, and he said he was, at that time.

"*Q.* And what did you ask him?

"*A.* I said, that was a mighty good business for these quiet times. I was surprised at that.

"*Q.* You asked him if he was doing the business at that time?

"*A.* Yes, sir.

"*Q.* And he told you he was?

"*A.* He told me $40 a day."

Defendants also stated to plaintiffs that cost of operating the hotel was substantially $900 per month. Plaintiffs contend and offered testimony tending to establish as a fact that they believed the foregoing representations made by defendants, that they relied upon such representations and were induced by them to consummate the contract of purchase; and further that the representations made as to income were false and fraudulent. Defendants deny having made any misrepresentations and assert that their only statement to plaintiffs as to income was that from the time they began to operate the hotel to the end of 1929, the total income was substantially $14,000 or approximately $1,200 per month.

Both at the close of plaintiffs' proofs and at the close of all the proofs in the case defendants moved for a directed verdict, and later sought the same result by motion *non obstante veredicto*. Denial of these motions by the trial court constitutes the principal ground of this appeal. Appellants assert that the motion should have been granted as a matter of law for the following reasons: (1) By failing to

rescind within a reasonable time, plaintiffs waived the right to rescind; (2) In electing not to rescind after knowledge of the alleged fraud, plaintiffs relied upon their own judgment rather than being influenced by defendants; (3) Rescission by plaintiffs was inadequate and insufficient because plaintiffs did not tender an accounting of income received while operating the hotel. The trial court held that decision of each of the issues presented by defendants' motion involved determination of an issue of fact, rather than one of law, and submitted each to the jury.

Appellants' contention that the court should have held as a matter of law that plaintiffs did not rescind within a reasonable time is based principally upon the following facts. At the end of the first month's operation (May 1, 1930) appellees discovered that the monthly income instead of being $1,200 was substantially $760; and again at the end of the second month the income was substantially less than $1,200 per month. The same was true of subsequent months. On this phase of the case the following testimony given by Mr. Dorgan on cross-examination is particularly stressed by appellants:

"*Q.* So on the first day of May, 1930, you knew that the income of this hotel had been misrepresented to you, didn't you?

"*A.* Yes, sir.

"*Q.* There was no question in your mind about that at all?

"*A.* No, sir."

In this connection it is urged by appellees that the record discloses facts which amply justify such delay as there was in rescinding the contract. Among these facts it is noted that when Mr. Dorgan discovered the shortage of income for the month of

April he said to Mr. Birney "the business was very quiet;" and thereupon Mr. Birney said that plaintiffs could not expect much business during April on account of bad weather, the roads and nobody driving because it was raining and cold, but in the summer business was always good at the hotel. And again in June, after it developed that the May receipts were only $944.82, Mr. Dorgan spoke to Mr. Birney about the business. Thereupon Birney said in substance that the summer business had not started, that there was not yet much travel and that there was always more travel the latter part of the summer and in the early fall. Again, in August, Mr. Dorgan stated to Mr. Birney that "the business was not what he told me he was doing;" and thereupon Birney replied that he was not responsible for the then prevailing depression, and said that shortly the county fair would be held and that the hotel should have a good fall business. Plaintiffs' testimony disclosed another important fact bearing upon this phase of the case. It is their claim that they first had reliable information on September 26, 1930, that the hotel receipts had not in fact been $1,200 during either the month of January or February, 1930, which was the period during which Birney had told them in the negotiations relative to the sale that he was *then* doing that volume of business. This information, according to Mrs. Dorgan's testimony, first came to plaintiffs' attention by reason of her having discovered in the room of Mr. Birney, who had continued to reside at the hotel, a memorandum made by him showing the receipts of the hotel for January and February, 1930, in the following amounts: January, $790.75; February, $897. Promptly thereafter plaintiffs rescinded the contract, demanding repayment, and surrendered pos-

session of the property. There is testimony in the record from which appellants claim Mr. and Mrs. Dorgan could have more promptly advised themselves of the amount of the January and February income. Be this as it may, plaintiffs denied having had such knowledge prior to September 26, 1930.

"This court has many times held that one seeking relief for fraud must act promptly after its discovery. *Draft* v. *Hesselsweet,* 194 Mich. 604; *Bowen* v. *Stocklin,* 215 Mich. 341. The mere lapse of time, however, is not sufficient to constitute laches. *Backus* v. *Backus,* 207 Mich. 690; *Walker* v. *Schultz,* 175 Mich. 280; *Humiston, Keeling & Co.* v. *Yore,* 181 Mich. 629. The delay in moving may always be explained, and, if satisfactorily accounted for, relief will be granted, notwithstanding the lapse of time. *Mulheron* v. *Henry S. Koppin Co.,* 221 Mich. 187." *Bayley* v. *Friedberg,* 226 Mich. 125.

"The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded. If he acts with reasonable promptness thereafter, it is sufficient. The law of laches should be used as a shield and not a sword." *Barron* v. *Myers,* 146 Mich. 510, 514.

See, also, *Zadel* v. *Simon,* 221 Mich. 180; *Sweet* v. *Martin,* 233 Mich. 655.

Notwithstanding Mr. Dorgan testified on cross-examination that on May 1, 1930, he knew there had been misrepresentation as to the income of the hotel, still in view of all the other facts and circumstances disclosed by this record it must be held that there was an issue of fact for the jury as to whether rescission was within a reasonable time. It was so submitted and the jury's finding was adverse to defendants. We find no reason for disturbing such determination.

As bearing upon appellants' contention that in failing to rescind more promptly Mr. and Mrs. Dorgan relied upon their own judgment rather than being influenced by defendants, the portions of the record above noted as well as other portions satisfy us that here again the issue was one of fact, not one of law. We are mindful, as stressed by appellants, the record discloses that Mr. and Mrs. Dorgan were hotel people of years of experience; and also that after they discovered the income of this hotel was less than $1,200 per month, they attempted to sell the property for a sum in excess of the amount they had contracted to pay. In connection with this latter circumstance it should be noted, however, there is testimony tending to show that plaintiffs' attempt to dispose of the hotel property was made at the suggestion of one or both of the defendants. In view of the attitude and statements of Mr. Birney which the jury might well have found lulled plaintiffs into inactivity as to the matter of rescission, it cannot be held as a matter of law that the delay in rescission was a matter which plaintiffs determined wholly upon their own judgment. Especially is this true in view of plaintiffs' testimony that the rather conclusive evidence of the alleged fraud in consequence of which they decided to rescind did not come into their possession until September 26, 1930. In arriving at this conclusion we are mindful that during his cross-examination Mr. Dorgan testified that he was not influenced in his judgment as to whether he should "give up the hotel" by any of the conversations which he had with Mr. Birney, as hereinbefore noted.

The remaining reason assigned in support of this appeal is that the trial court should have held as a matter of law that the rescission was inadequate and

insufficient because plaintiffs did not tender an accounting of income derived from their operation of the hotel. There is testimony that instead of plaintiffs' having derived a net income, they operated the hotel at a financial loss. If the jury found such to be the fact, clearly there was no occasion for an accounting by Mr. and Mrs. Dorgan. This phase of the case was properly submitted to the jury. We quote a portion of the trial court's charge:

"If plaintiffs had made a profit out of the hotel, they should have tendered such profit back. If they didn't do so, they cannot recover in this action. But if the plaintiffs had in fact operated the hotel at a loss, then there would be nothing to tender back and an accounting would be an idle thing."

The hotel property itself was not only tendered back to appellants prior to instituting suit but it was actually surrendered to and received by them, and they thereafter continued to operate it. Appellants' contention is correct that since this is a suit at law, rather than in equity, for recovery on the ground of fraud and rescission, tender back of the property which passed to plaintiffs from defendants was a prerequisite. *Witte* v. *Hobolth,* 224 Mich. 286; *O'Neill* v. *Kunkle,* 244 Mich. 653. But this record does not disclose that plaintiffs' rescission was inadequate and insufficient as a matter of law because of their failure to tender an accounting of profits since the jury obviously found plaintiffs made no profit in operating the hotel.

Judgment entered in the circuit court is affirmed. Costs to appellees.

POTTER, C. J., and NELSON SHARPE, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.